IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARRYEL LEE,

        Petitioner,

v.

BRIAN BELLEQUE,

        Respondent.

Case No. 6:11-cv-01356-SI

OPINION AND ORDER

C. Reñee Manes, Assistant Federal Public Defender
Kristina Hellman, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his 2003 state-court robbery convictions. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

In the fall of 2011, there were a series of tavern robberies in the Portland area which culminated in petitioner's arrest. Petitioner was indicted and tried on three of those robberies. He proceeded to a jury trial where one of the eyewitnesses, Virginia Raison, identified him as a participant in the robbery of the Cheers Northwest Tavern. She testified that when she was initially shown a photographic "throw-down" by the investigating detective, she first identified another individual and was 40-45% sure of that choice. Trial Transcript, pp. 885-86, 891. She then picked out petitioner and believed she was 80-85% sure in her identification of him as the suspect. *Id.* She claimed she had a "mental snapshot" of petitioner that was based on the fact that she had been "pretty focused on his eyes" which were light brown. *Id* at 888, 896. When defense counsel asked Ms. Raison to approach petitioner and tell the jury what color his eyes were, she was surprised to discover that they were "very blue." *Id* at 896-97.

On May 21, 2003, the jury found petitioner not guilty of two of the robberies, but convicted him of three counts of Robbery in

2 - OPINION AND ORDER

the First Degree with a Firearm and three counts of Robbery in the Second Degree as to the Cheers robbery. As a result, the trial court sentenced petitioner to consecutive sentences totaling 225 months in prison. Respondent's Exhibit 101.

Petitioner took a direct appeal where his appointed attorney could not find any non-frivolous issues to present on his behalf and therefore filed a *Balfour* brief.[1] Petitioner took the opportunity to file a *pro se* Section B of the *Balfour* Brief wherein he raised several claims.

Two months after filing his *Balfour* brief (but before the Oregon Court of Appeals ruled on his appeal), petitioner claims he learned of jury misconduct in his case. His sister, Doris Lee, and her friend, April Murphy, were present at his sentencing and encountered a juror from his trial. The juror purportedly informed them that the jury had conducted an experiment to determine whether Ms. Raison could have confused petitioner's blue eyes for brown in the dim lighting of Cheers. The jurors dimmed the lights to simulate dim tavern lighting, picked out a juror who had blue eyes,

---

[1] The *Balfour* procedure provides that counsel need not ethically withdraw when faced with only frivolous issues. Rather, the attorney may file Section A of an appellant's brief containing a statement of the case sufficient to "apprise the appellate court of the jurisdictional basis for the appeal." *State v. Balfour*, 311 Or. 434, 451, 814 P.2d 1069 (1991). The defendant may then file the Section B segment of the brief containing any assignments of error he wishes. *Id* at 452.

3 - OPINION AND ORDER

and had him stand at a distance.[2] Respondent's Exhibits 115 & 116.

On June 29, 2005, the Oregon Court of Appeals, never presented with any claim regarding jury misconduct, affirmed petitioner's conviction and sentence without issuing a written opinion. *State v. Lee*, 200 Or. App. 415, 115 P.3d 988. On September 27, 2005, the Oregon Supreme Court denied petitioner's Petition for Review. 339 Or. 406, 122 P.3d 64 (2005).

Also on or about September 27, 2005, 17 months after the Circuit Court had entered its Judgment against him, petitioner filed a motion seeking a new trial in the Multnomah County Circuit Court. Respondent's Exhibit 117. Two months later, he filed a supplemental brief in support of that motion. Respondent's Exhibit 118. The Circuit Court never ruled on his motion for a new trial.

Petitioner next filed for post-conviction relief ("PCR") in Marion County. Among the claims petitioner raised to the PCR trial court was whether the jury committed misconduct when it conducted an independent investigation and used extrinsic evidence during its deliberations. Respondent's Exhibit 109, p. 5. The PCR trial court, citing state authority including *Palmer v. State*, 318 Or. 352 (1994), determined that claims of trial court error could not

---

[2] The PCR trial court appeared to reject the bulk of the Affidavits and Lee's PCR trial testimony as inadmissible hearsay. Respondent's Exhibit 136, pp. 13-15, 19, 110-12 (record not sequentially numbered).

4 - OPINION AND ORDER

be raised in a PCR action under Oregon law.[3] Respondent's Exhibit 136, p. 12. The Oregon Court of Appeals summarily affirmed the PCR trial court's decision on the State's motion, and the Oregon Supreme Court denied review. Respondent's Exhibits 141 & 143.

Petitioner filed his federal Petition for Writ of Habeas Corpus on November 10, 2011 in which he raises approximately 30 claims among six ground for relief. Respondent asks the court to deny relief on the Petition because: (1) petitioner failed to fairly present many of his claims to Oregon's state courts, and they are now procedurally defaulted; (2) the claims that petitioner did fairly present were denied in decisions that were neither contrary to nor unreasonable applications of clearly established federal law; and (3) petitioner's claims lack merit.

## DISCUSSION

### I. Unargued Claims

As previously noted, petitioner raises a numerous claims in his Amended Petition. In his supporting memorandum, however, he chooses to brief two claims: (1) whether his trial attorney rendered ineffective assistance when he failed to properly cross examine Virginia Raison and Detective McGetrick (Ground One (A) & (H)); and (2) whether the jury committed misconduct when it

---

[3] In *Palmer*, the Oregon Supreme Court determined that, subject to a few narrowly-drawn exceptions, a petitioner may not raise direct appeal claims in a state post-conviction proceeding. 318 Or. at 354.

5 - OPINION AND ORDER

conducted an independent investigation and used extrinsic evidence during its deliberations contrary to the trial judge's limiting instructions.

Petitioner does not argue the merits of his remaining claims, nor does he address any of respondent's arguments as to why relief on these claims should be denied. Instead, he submits the those claims for the court's consideration on the existing record. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). The court has nevertheless examined them based upon the existing record and determined that they do not entitle him to relief.

## II. **Exhaustion and Procedural Default**

### A. **Standards**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v.*

6 - OPINION AND ORDER

*Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery,* 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland,* 518 U.S. 152, 162 (1996); *Sawyer v. Whitley,* 505 U.S. 333, 337 (1992); *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

B. **Analysis**

Respondent argues that petitioner failed to fairly present his jury misconduct claim to Oregon's state courts because: (1) he did not raise the claim during his direct appeal; (2) his attempt to raise the claim during his PCR trial was insufficient to satisfy

7 - OPINION AND ORDER

the fair presentation standard because the PCR trial court rejected the claim on independent and adequate procedural grounds; and (3) even assuming the PCR trial court had not rejected the claim on procedural grounds, petitioner failed to pursue the claim during his PCR appeal.

Petitioner first argues that the criminal trial court never ruled on his motion for a new trial, thus the Oregon courts prevented him from raising this issue during direct review. Oregon law generally requires a motion for a new trial to be made within ten days of the entry of the judgment to be set aside. ORCP 64(F)(1). The trial court is then obligated to make a determination on that motion within 55 days. If the motion is "not so heard and determined within said time, the motion shall conclusively be deemed denied." *Id.* In this way, the Circuit Court conclusively ruled on the motion by omission.

Petitioner also based his motion for a new trial upon ORCP 71. A judgment can be set aside based upon fraud or on newly discovered evidence which could not have been discovered through the exercise of due diligence within the 10-day period described within ORCP 64(F)(1) if the motion is made "within a reasonable time" but "not more than one year after receipt of notice by the moving party of the judgment." ORCP 71(b)(B)(1). Where petitioner waited 17 months to file his motion, it was clearly untimely under this rule as well.

8 - OPINION AND ORDER

Even assuming a defendant could seek relief from a criminal judgment after the passage of more than a year, the record before the court does not support petitioner's unsworn contention that he only became aware of the jury misconduct issue in December 2004. Petitioner's sister claims that she learned of the alleged jury misconduct on the day petitioner was sentenced. Respondent's Exhibit 116, pp. 1-2. She also maintains that she met with petitioner frequently while he was incarcerated at the Multnomah County Inverness Jail where she discussed his case with him and where he continued to claim he was innocent. *Id* at 2. Despite these frequent meetings, petitioner asserts without any documentary support (including the affidavits of Ms. Lee, her friend, and petitioner's own PCR deposition testimony) that Ms. Lee did not advise him of this significant development for 15 months. In light of the record before the PCR trial court as well as this court, this is not a credible allegation.

Indeed, when asked during his PCR deposition whether he raised the jury misconduct issue in his *pro se* section of his *Balfour* brief, petitioner stated that he could not recall. Respondent's Exhibit 126, p. 32. He never stated that he was unaware of the claim at the time he filed his *Balfour* brief. Similarly, Ms. Lee never declared that she waited for more than a year before conveying her conversation with the unidentified juror to petitioner. Although Ms. Lee appears to state that the

9 - OPINION AND ORDER

unidentified juror made defense counsel aware of the jury misconduct issue at petitioner's sentencing, counsel swears that he has no such recollection of such an event and, if such a conversation had taken place, he would have viewed it as a "red flag" and brought it to the attention of the trial court. Respondent's Exhibit 124, p. 7.

Not only is it dubious that petitioner was unaware of his claim on or about the date of his sentencing, but once petitioner purportedly learned of this significant development in his case he did not file his motion for a new trial for nine more months – even as he continued to litigate his direct appeal. This shows that petitioner was simply not diligent in pursuing his claim. Petitioner's lack of diligence during direct review does not justify the conclusion that the State prevented him from raising this claim by not ruling on his untimely motion.

With respect to his PCR proceedings, petitioner contends: (1) the PCR trial court's invocation of *Palmer* was unfair where he could not have been expected to raise the jury misconduct issue during direct appeal because he did not learn of the misconduct until after his appeal was filed, and even then it had not been preserved in the trial court; (2) even assuming the claim was defaulted, the court should excuse the default because the Multnomah County Circuit Court refused to consider his motion for a new trial thereby providing petitioner only with a state

10 - OPINION AND ORDER

corrective process which was ineffective to protect his rights; and (3) the doctrine of judicial estoppel should preclude the State from asserting in this case that petitioner's default stemmed from his fail to appeal his Ground Two claim following his PCR trial, where it asserted during the PCR trial that the claim was not cognizable in a collateral proceeding.

As previously discussed, petitioner's inability to raise his jury misconduct claim during direct review was attributable to his own lack of diligence. That lack of diligence during direct review does not render the PCR trial court's invocation of *Palmer* unfair. Whether petitioner was diligent on direct appeal or not, to the extent he disagreed with the PCR trial court's application of *Palmer*, he was obligated to raise that issue with the Oregon Court of Appeals and the Oregon Supreme Court but chose not to do so.[4] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). While he may have felt an appeal was futile given the PCR trial court's ruling, futility does not justify his failure to give Oregon's appellate courts an opportunity to adjudicate the claim. *See Engle v. Isaac*, 456 U.S. 107, 130 (1982) (a petitioner may not

---

[4] Although petitioner attempted to couch his jury claim in terms of ineffective assistance of counsel during his PCR appeal, Respondent's Exhibit 138, p. 31, such a claim was not preserved in the PCR trial court and is not contained within the Petition for Writ of Habeas Corpus.

11 - OPINION AND ORDER

bypass the state courts because he believes they will be unsympathetic to his argument).

In addition, petitioner cannot excuse his default by asserting that the Circuit Court refused to consider and rule on his motion for a new trial where, by rule, the Circuit Court's inaction served as a conclusive denial 55 days after he filed his motion. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (to establish cause to excuse a default, a litigant must show that some external factor not attributable to him prevented him from complying with a state procedural rule).

Moreover, with respect to petitioner's argument that the State has asserted inconsistent positions during the course of its litigation of this case, the court disagrees. The State asserted during the PCR trial that Oregon law barred petitioner's claims of trial court error. Here, the State continues to make that assertion, but maintains that even if *Palmer* should not have barred the jury misconduct claim, petitioner nevertheless failed to appeal the PCR trial court's decision and thus foreclosed his own opportunity to have the merits of his claim addressed. Judicial estoppel does not bar this line of reasoning.

Petitioner did not diligently pursue his jury misconduct claim during direct review, and he elected to abandon the claim following his PCR trial. As such, he failed to fairly present his Ground Two jury misconduct claim to the Oregon state courts, the claim is now

12 - OPINION AND ORDER

procedurally defaulted, and petitioner is unable to excuse his default. Consequently, petitioner's requests for discovery and an evidentiary hearing on his Ground Two claim are denied.

## II. The Merits

### A. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct

13 - OPINION AND ORDER

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

### B. Analysis

As his remaining claims, petitioner alleges that his trial attorney failed to thoroughly cross-examine Ms. Raison and Detective McGetrick pertaining Raison's eyewitness identification. He believes Raison could have inadvertently identified him as the perpetrator of the Cheers robbery because: (1) Raison and her husband lived in petitioner's neighborhood, and all of them frequented Cheers such that she could have simply recognized him as a familiar face; (2) the photographic "throw-down" McGetrick showed Raison involved multiple photographs at once as opposed to single photos in a sequence; (3) counsel did not ask McGetrick whether he eliminated the possibility that Raison may have identified petitioner simply because his was a familiar face; and (4) counsel never explored whether McGetrick made any verbal or non-verbal cues that might have affected Raison's identification. He believes that

14 - OPINION AND ORDER

these failures deprived the jury of information it needed to accurately assess Raison's identification.[5]

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of

---

[5] Respondent asserts that these arguments differ from the claims alleged in the Petition for Writ of Habeas Corpus in a manner sufficient to render them unreviewable. The court need not address this issue because petitioner is not entitled to relief on the claims he argues.

15 - OPINION AND ORDER

review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

Among the evidence the PCR trial court considered was an affidavit from trial counsel. Relevant to petitioner's argued claims, counsel attested as follows:

> 9. Virginia Raison, the eyewitness whose testimony petitioner believes should have been subject to a motion to suppress, selected two photos from the montage presented to her. Petitioner was her second choice of the photos she selected. It was my practice to challenge an eyewitness identification if I believed there was a basis to do so and no reason not to challenge the identification. In this case, however, there was an inherent suggestion that the witness was wrong in the dual identification and I determined that the information was helpful to our case during cross-examination. I made a tactical decision to attack the veracity of her identification on cross-examination. The result of cross-examination of this particular witness was extremely favorable to the defense as the witness testified that her identification was based upon the petitioner's eyes; stating they were brown. When I asked the witness to approach petitioner and state the color of petitioner's eyes, she exclaimed that they were "very blue." I believe that the result of this approach at trial was tactically extremely beneficial to the defense and created significant doubt about Ms. Raison's testimony.
>
> 10. Petitioner further states that I should have hired and subpoenaed to testify various experts; such as an expert in eyewitness identification, forensics, and

16 - OPINION AND ORDER

> psychology. Based upon the facts of this case and the eyewitness testimony previously discussed, I do not believe expert testimony of this nature would have been relevant or beneficial to the defense.

Respondent's Exhibit 124, pp. 5-6.

The PCR trial court made the following factual findings when rejecting these claims:

> 1. To begin, Petitioner's acknowledged defense at trial was that he was not the person responsible for the tavern robberies. To that end, counsel for petitioner effectively elicited statements from each of the witnesses who testified about the two robberies petitioner was charged with at Cheers Tavern and the Golden Slipper. Each of those witnesses recalled a slightly different version of the robber, generally casting doubt on all of their memories.
>
> 2. Petitioner's counsel particularly pursued this line of inquiry with the eyewitness from Cheers Tavern, Virginia Raison.
>
> 9. During the course of petitioner's trial, as counsel pointed out to the jury in his opening statement, there was a multitude of descriptions about the robbers and their clothing. Counsel illustrated to the jury that the testimony he anticipated covered a wide array of possible descriptions; and petitioner's counsel's predictions, for the most part, were correct. Counsel highlighted these discrepancies for the jury, asking that they pay close attention to these details in support of the idea that there was no clear description of petitioner – thereby lending support to the defense alibi theory that petitioner's arrest was a case of mistaken identity.

17 - OPINION AND ORDER

14. Petitioner alleged that certain expert witnesses should have been retained and called at trial; specifically, an expert in eyewitness identification, forensics, and psychology. Generally, petitioner asserted that an expert in these areas could have cast doubt on certain eye-witness testimony; particularly as it related to the witness at Cheers Tavern, Virginia Raison.

15. Petitioner's counsel did not believe that expert testimony of this nature would have been relevant or beneficial to petitioner's case. Counsel is correct in this assessment. Petitioner failed to meet his burden and demonstrate that he was prejudiced as he presented no evidence or witnesses in support of this claim.

20. Petitioner complained that counsel failed to investigat[e], cross-examine, and object to the testimony of Virginia Raison. Raison's testimony, despite petitioner's contention otherwise, was on the whole fairly beneficial to the defense. On cross-examination, for example, counsel was able to elicit testimony from Raison that petitioner was her "second choice" among the photo montage presented to her, and that her first choice was the person who looked most like the robbery suspect to her at the time. She made this determination based on the mouth and shape of the nose.

21. Raison then further testified, in explaining why her "second choice" became her first choice; that the snapshot image she had of petitioner's eyes, hairline and remainder of facial features matched the robber. Raison testified and agreed with counsel that she got a very good look at the robber's eyes and they were brown. However, when counsel had Raison approach petitioner and look at his eyes,

>       she exclaimed "Oh . . . [t]hey are very blue."
>
> 22. Counsel's cross-examination of Raison was incredibly effective in potentially creating doubt for the jury about the weight and credibility it could assign to Raison's testimony. Raison, however, held firm to her statement that petitioner was the robber. Petitioner's assertion that further investigation would have caused Raison to change her mind is without support. Counsel was effective and petitioner's case was not prejudiced by counsel's investigation or cross-examination.

Respondent's Exhibit 136, pp. 4-9.

Not only did counsel do an excellent job by calling Raison's eyewitness identification into question, but petitioner offered no expert testimony during his PCR trial pertaining to witness identification or photographic "throw-down" procedures and how those issues may have affected his case. He also failed to present any testimony from Raison, McGetrick, or any other compelling party indicating that the police questioning was suggestive, coercive, or otherwise flawed. In this regard, petitioner's claims are speculative and unsupported by the record.

The PCR trial court's decision denying relief on these claims is both thorough and well-reasoned. Accordingly, that decision did not involve an unreasonable application of clearly established federal law, nor did it involve an unreasonable determination of the facts in light of the evidence presented.

///

19 - OPINION AND ORDER

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The court grants a Certificate of Appealability only as to the issue of whether petitioner's Ground Two jury misconduct claim is eligible for merits review.

IT IS SO ORDERED.

DATED this 23rd day of December, 2013.

Michael H. Simon
United States District Judge